Thank you, Your Honors. May it please the Court, in this case, plaintiffs were denied for years their due process right to a timely hearing following deprivation of a property interest by their employer, the Department of Health and Human Services. I'd like to address two main points this morning. First, that those delays are fairly traceable to HHS as its actions had a predictable effect in dramatically delaying hearings in plaintiffs' matters. And second, that this is the correct avenue, this avenue that plaintiffs have pursued filing through the District Court, the correct avenue to address this violation and seek a remedy for the violation of plaintiffs' due process rights. Can you start instead by addressing why the case isn't moot, given the appointment of a full board now and the blessing, if you would, of the ALJs? Xavier Becerra Yes, Your Honor, absolutely. The issue here is that the due process violation has already occurred. The due process violation here is the extraordinary delay that plaintiffs faced. The relief sought here is not a hearing on these matters finally years and years and years later at some point in time in the future, because the plaintiffs still have not had a hearing, the matters still remain open at the MSPB. The due process violation already occurred. What we're now seeking is a remedy for that already occurred due process violation. But the remedy that we could – we can't give you substantive relief, right? So you've alleged a procedural violation. We can provide you procedural relief, right? We might be able to enjoin HHS from doing certain things, but we can't actually grant you back pay for a procedural violation. It doesn't strike me. So, Judge, I believe that that is the remedy for procedural violation, and there's quite a bit of case law – Help me understand how if you allege a procedural violation that in the context of the Civil Service Reform Act that this court can say you get back pay. Certainly. So, and Judge, the – admittedly, a lot of the case law on this is at the MSPB, the Merit Systems Protection Board, and the Federal Circuit where a lot of these matters end up instead. But with that, cases like Ward, Stone, even to some extent back to Loudermill there, this is a situation where – That's because they can grant – I mean, they can do lots of things, right? Like they have statutory authority to give you back pay, right? So I get that, but the question is whether we or our district court has the authority outside of the Civil Service Reform Act to say, hey, this organization didn't dot their I's and cross their T's or provided no process at all. How do we have an authority to grant substantive relief as opposed to procedural relief, right? We might be able to say, you know, HHS, stop filing these motions, or, you know, board, have a hearing, ALJ, have a hearing. But I don't understand how we can grant you substantive relief for your mere procedural – We probably don't even have jurisdiction. I mean, for substantive relief, you probably have to have the Federal Circuit, right? So it's a very interesting question, Judge, and that the jurisdiction – I think it's sort of part of the relief that – the question about relief, what kind of relief can we grant? You've brought it here basically for, what, due process violation, I suppose. That's correct, Judge, and I think hopefully this answers both of your questions on that issue where we don't think we could bring this to the Federal Circuit. We don't think the Federal Circuit does have jurisdiction. I know that defendants have raised the possibility of raising this to the Federal Circuit instead, this claim, this – On that issue, I think you well could have appealed to the Federal Circuit if you've gone, say, four times or five times on the Fifth Order, appeal it. It's a little bit like the injunction that's not acted on. We take those cases and conclude that the injunction is, in effect, denied. And I think if you appealed one of those orders to the Federal Circuit, the Fifth One, say, the Federal Circuit would say, well, at this point your relief has been denied because effectively none of the procedure has been put in place. But that's neither here nor there. I think the government's main argument is the fact that HHS filed a motion does not determine how the ALJ rules. And that's sort of holding the person who files a motion responsible for the decision of a judge. And they say that's hardly standing. To sue HHS is hardly meaningful in any way. Anyway, this case has got what? It's got standing whether you have relief. It's got mootness questions. It's an interesting mix. Certainly, Judge. And, you know, perhaps to this standing issue, going back to your question there, I think what we're looking at here is obviously for standing there doesn't need to just be approximate causation, right? And we think that what we're looking at here is kind of a predictable effect situation for standing, like the Supreme Court addressed in 2019 in Department of Commerce. Obviously, there's not a pure overlap there, but I think it stands for an important proposition that for purposes of standing, plaintiffs don't need to establish that it's solely HHS's fault. There can be a situation. It's analogous, I think, to suing the person who files a motion in federal court for responsibility for the fact that the court granted the relief. The court made its own decision to grant the relief. And so you're going to sue the attorney for asking the court to grant the relief? And friendly hypothetical, when they're plainly correct, when the motion is legally correct, right? I mean, that's the oddity you've got here, right? It's like sometimes we might imagine a malicious motion or something. Maybe we think there's some sanctional action, but they're filing a motion that's right. So, well, I will disagree on that, Judge. I don't think their argument on Lucia is in fact correct. But, of course, the merits are not before this court. I do. I think there are deficiencies there. But to that point, we're not looking at a situation where I think this goes beyond a situation where you can assert that the briefing is simply part of the vigorous defense the agency is raising. Part of their briefing is part of their filings here. This is a concerted effort over nearly 100 cases of current and former HHS employees where those briefs were filed. Do not have adjudications that will all ultimately be vacated because they're done by an individual who lacks the authority under law. And that can be a concerted effort, right? Why is that a bad thing? All right, so you may want to say that this is different, but assume for a minute I don't buy that. What's wrong with being a concerted effort to ensure that we're not wasting our time on adjudications that are, like, by their nature, like, invalid? I think that actually goes to the merits aspect of this, of does this delay rise to the level of constitutional due process violation? What you're raising there, Judge, I think goes into the mal-infactored analysis. That is part of the justification for the delay in evaluating what length of time of delay is reasonable under the circumstances. That's where that fits into the larger framework. Right, but you want to blame, I mean, you know, there's plenty of blame to go around here. But it's hard to see why the blame is HHS's for saying, listen, we're literally just trying to follow the law. I understand, Judge, and here we're not asserting that HHS is solely at fault, right? And as you said, I think the district court recognized this. There's some finger-pointing going on here. There's a lot of issues that gave rise to this situation. It's a fairly unique situation. You know, we had, I don't know if it's totally analogous, but we've had these cases, as the D.C. Circuit has, where people, hospitals wanting reimbursement from Medicare and Medicaid have had a backlog of something like 18 years. And the answer was there was insufficient funding to have people to review all these things. And eventually Congress did it. But these were allegations of due process violations. And really what you're addressing at bottom line, I think, is an address against bureaucracy, the failures of bureaucracy. I mean, your people have been inappropriately dealt with. There's no question about it. It's a very sympathetic situation. But we have a bureaucracy that has failed for whatever reason and caused some delay. The question is, what do we do? I mean, we can't direct Congress to fund. We can't direct this. And everybody's sort of come to that conclusion. We're the third branch, and this is a failure of, well, this particular failure was a little different failure. It was the appointments clause. And the result is the bureaucracy got gummed up and delayed. But I do believe you had more direct remedies. And the question is suing HHS is so indirect. HHS is trying to make due with the cards it's dealt. And it did the best they thought it could under the Lucy opinion, whatever it was, on the judges. And the real problem was I guess some of the delay was a failure to appoint a board, right? In part, Judge. And I think – Political question there. So part of what we're looking at here, though, is this issue of were there other avenues, were there other direct avenues. And I think the Federal Circuit has indicated to us that it wouldn't be able to review such – They can't review an order that's without prejudice like the initial order. And they would send that back. There's no doubt about that. But there comes a point when that's done so many times that you can make a very credible argument to the Federal Circuit and say it's the same principle that when a district court judge doesn't act on an injunction and he goes on for 18 months and he hasn't acted on the injunction, we've entertained appeals from that even though there's no final judgment. And the statute says any order granting or denying an injunction. And, of course, the district court is neither granted nor denied. Your argument would be they have to take an appeal from a final order, but de facto couldn't be more final. I've been waiting years for this. And they may deny that. But the other avenue could have been, the government suggests, could have been a mandamus action. And to that point, I don't think mandamus is actually available here. Maybe not. It may not be. Because mandamus circumvents a procedure that's already in place. That's the difficulty with mandamus. Quite certainly. And that's what we're looking at here is that in the Jadov case where the Federal Circuit addressed some of this, the petitioner there did not have the same constitutional claims the plaintiffs do. But the best we could do, I suppose, if HHS was responsible, we could tell them don't file those motions, and where does that leave you? So if HHS files, and here's some of the issues. They couldn't adjudicate the claims. For which form? They're seeking pay. Your clients are. This is a procedural case, and you come before us and say this practice violates due process.  That's all they've been doing is filing the motions, right? So they have been filing motions. That's the conduct that they engaged in. So we tell them stop. And I think in part what we have to look at here, and again, this goes a bit to my earlier comment on what's the process do here. The process do generally for these types of procedural due process violations is a new constitutionally correct proceeding. And that's where we get about. Since we have a full board and the ALJs have now been blessed, have they filed motions since then? Why would we think they're filing motions today? We don't enter injunctions to do something that you're not doing, right? That's not what we do. And so I would be shocked to learn. I'm going to ask your colleague in a minute, but I'll ask you too. Do we have any reason to think that today HHS is filing these hundreds and thousands of motions that they used to file? I don't think quite that many ever, Judge. But, no, I don't believe that they are, in fact, still filing. Because, for the very point, the case is now moot, right? Because you have that access, whatever access it was. HHS is no longer standing in your way. There may be other problems, right? There's a line. I get those. But you've only sued one organization, right? And so we can only look at, like, what they've done, right? You might have, I mean, you don't really. But in theory, you might have claims against the President or the Senate or somebody else who mucked up the appointments. But, like, HHS has only done one thing, and that's file a motion. So, again, the due process violation has already occurred. So we're not kind of seeking to preempt the violation of due process. This has already occurred. And so there's no benefit, really, to, as you stated, a plaintiff seeking instruction to defendants to stop doing something that they've already stopped doing. This is all in the past here at this point. At this point, what we're looking at is HHS having taken these individuals' property, taken this property interest by firing them, by demoting them, implicating this property interest. And these individuals. On that issue, we don't have jurisdiction. We cannot restore money. And the whole process is taken from us. The best you can do is to allege HHS did something wrong that can correct a process. But the only conduct that HHS engaged in was to file these motions. And so now the question is, what relief would you have? And I'm trying to look and see what you asked here in your complaint. But what relief did you ask us to impose against HHS? As we're stating here, Judge, the declaratory relief of violation of the due process. And so ultimately a rescission of these actions that HHS has imposed. These claims, this appeal stems from. Okay, so we tell HHS not to file them and then retroactively you want us to take all those decisions made by the ALJs. You want us to reverse those somehow? No, Judge, I think that's what the issue is here. There are no ALJ decisions because these matters have been. The decision was to dismiss. ALJ made a decision to dismiss, right? Without prejudice. The dismissal is without prejudice, correct. So what I'm referring to is a rescission of the personnel actions, the terminations, the suspensions here. We don't have the substantive cases before us. You're just addressing a violation of due process committed by HHS. They didn't address the. . . For them to get money, they're going to have to go through the system and then go to the federal circuit, right? The normal process would be that avenue, yes, Judge. And I see my time has concluded. Yeah, no, you can respond to that if you wish. And so I think my response to that, Judge, is that the remedy here is this reversal, is this restoration. The first step in getting this restoration, this new procedurally correct, constitutionally correct procedure to correct these personnel actions that HHS took, which ultimately resulted in this due process violation, is a rescission reversal of those personnel actions, reversal of the termination, reversal of the demotions. Were they before us? Were they appealed to us? You basically appealed. . . You filed an action challenging HHS's filing of motions. So how did we somehow get jurisdiction over your claims for pay? Because, again, Judge, it's our position that the remedy for these due process violations, these procedural due process violations, being as though they implicate. . . We're going to just disrupt the whole process Congress created, and we're going to take a direct review of their cases and give them relief. And, unfortunately, it's a situation, perhaps a unique situation, Judge, where that process created by statute was nonfunctioning for a time. And in that delay, the plaintiffs were provided only that avenue to seek relief. We'd be creating a lot of interesting powers in our own behalf. All right, you have rebuttal. Let's hear the other side. Mr. Salzman. Thank you, Your Honor, and may it please the Court, Joshua Salzman for HHS. I'd like to begin with Judge Niemeyer's observation that this case seems to have a lot in it, and jurisdiction and mootness and standing. And I'd posit that each of those offers an independent basis for affirmance here and an independent flaw with the pleadings here. I'll begin by emphasizing two. One is the traceability holding that the district court resolved this case on, and also on the jurisdiction holding that I think has rightly been, or the jurisdictional question that has rightly been a focus of the discussion so far. But before I get into those, I'd like to refer the Court to page 16 of the joint appendix. That's the prayer for relief in the complaint, because I think it will help clarify exactly what this case is about and not about. There is a request there for declaratory relief. I think that is unquestionably moot at this point. Because the board's now appointed and has ratified the appointments of the ALJs, there's no prospective issue about HHS filing these motions. Then if you look at JA-16, what the rest of this is about is money. It's about substantive relief. It's trying to get reinstatement and back pay. And as I think I heard from Judge Niemeyer, that's a blatant end run around the processes set up through the Civil Services Reform Act. This is not about getting them the timely adjudications. This isn't about process. I posed it as a question. It was a loaded question. Well, that was just a question. Well, regardless of the intent, of course, and I don't want to presume to speak for what Your Honor actually thinks on that question, but I would suggest that that question is highlighting an important deficiency here in this case, that the way to get substantive relief, to get back pay and reinstatement, isn't to file a due process suit in the District of Maryland outside of the procedures that Congress established. My colleague suggested, almost as if it was happenstance, that the case law about what happens in due process in these cases tends to be in the Federal Circuit. I just looked at his relief, and he wants a declaratory judgment, but he basically wants us to order back pay, and it seems to me that is like a mandamus. He's asking us, as an irrelevant court in the process established, to go back and give these guys back pay because the HHS didn't give them due process. I think that's probably the way they would describe it, but I don't think the district court had jurisdiction to provide that kind of substantive relief under Elgin and under the Civil Services Reform Act. There were proper mechanisms to use, including appeal to the Federal Circuit, as a way to litigate these issues, but in terms of getting the substantive relief, simply by attaching a constitutional label to your claim is not a means, as the Supreme Court made clear in Elgin, of circumventing the substantive procedures Congress laid out in the CSRA. I'd also like to spend a minute on the traceability argument, because I do think that that's a separate, independent flaw, but it is actually the basis on which the district court ruled here. Here, they allege that HHS did nothing more than made an argument, and as Judge Richardson observed before, a very meritorious argument to a neutral adjudicator, who then exercised a discretionary docket management tool that led to the delay in resolution of plaintiff's claims. That doesn't have the necessary link of causation. When you make an argument to a court or an adjudicator, that fails the traceability test, and in particular, I'd refer the court to, there's a case cited in our brief called Tarani v. Ray from the Sixth Circuit, and in describing the principle that the intervening act of a third party can break the chain of causation and prevent the demonstration of traceability, it actually uses as a paradigmatic example of when that will be true when a litigant makes an argument to a court, and that's in fact exactly the circumstance we have here. Of course, there was a 100% success rate in making these motions, right? There was, Your Honor. But I think that speaks to the fact that this was a serious argument and a serious defect being highlighted by HHS. But it wasn't being made by other agencies, nor was it being raised sui sponte, was it? It was not being raised sui sponte. Other agencies did not make that argument. I can't speak categorically to whether any other agencies raised this argument, but certainly not all did. Right, but what did happen is that when the agencies didn't raise it and the claimant lost before the ALJ, we then vacated those decisions, like in the Social Security context, so it became sort of a one-way story, right? So if the claimant won, they won, but the claimant lost, then they could come to the federal courts, and we vacated all those decisions because the ALJs were not validly appointed. That absolutely happened in the Social Security context. This court had the Probst case, and then it went up to the Supreme Court as Carr v. Saul. The federal circuit right now is still considering the McIntosh case, which is referenced in our briefs, where a litigant against the Department of Veterans Affairs tried exactly the maneuver that Your Honor is suggesting, litigated the case before the administrative judge at the MSPB, lost on the merits, and then raised an Appointments Clause challenge for the first time in court. So yes, that is absolutely a valid concern for the agencies to have under these circumstances. And the concern there is that, based on exhaustion, you don't even have to raise it at the ALJ level, depending on the statute and lots of different things, but there may not be issue exhaustion that's required in order to raise it on the back end. And so an agency might have really good reason to say, no, we want these done by an ALJ who's properly appointed or properly blessed after the fact, as we now have. Yes, that's a completely valid concern. I want to be careful here because we are arguing in McIntosh that the forfeiture rules don't carry over, that administrative forfeiture principles do apply to the MSPB, but it's an open question, and there's absolutely legitimate cause for concern there. I'm happy to address any other questions the panel may have for me. All right. Thank you, Mr. Salzman. Thank you. Thank you, Your Honors. Just to address a few points raised by my colleague there, on the traceability issue here, Your Honors are correct in the sense that these matters were not raised to Esfante. And this goes to that traceability connection, the predictable outcome here. The motions filed by HHS specifically sought a dismissal until appointment of a new board here. And this had no end in sight at the time. There was no way to predict as to when this would occur. But dismissal until the appointment of a new board, but not for the board's sake. The point of that was dismissal until we've got ALJs that have been properly appointed. Correct, Your Honor. But here, but for HHS filing these motions, these matters proceeded. These matters continued. The MSPB did not stop processing these. The MSPB did not raise this Lucia issue to Esfante. Business proceeded as usual. But for HHS stepping in and raising these motions. And here the problem is HHS filing these motions, raising this issue with the appointments situation at the MSPB, effectively blockaded off, barricaded off this one avenue to get this post-deprivation relief, this post-deprivation hearing afforded to plaintiffs. It's a due process right. It's also a statutory right on this avenue through the MSPB. But the HHS motions cordoned that off. And so they have nowhere else to go. How long would be, where do you sort of draw the line on how long is too long? Right, so we have some administrative proceedings and indeed some court proceedings that sometimes take a long time. And that's not always the fault of the administrative or judicial officer. Sometimes we've just got a volume problem, right. And so you might imagine in some social security settings or in some particular visa context they're extraordinarily long delays. Black lung. Black lung cases. And I think some of the case law on this issue addresses that issue. And there's no clear bright line here. Rather what we're looking at is somewhat of a reasonable evaluation within this Malin context of application of the Malin factors. How long is too long? But if that's true, so accept that. How long is too long? HHS says, why are we being held with the expectation that the president and the Senate are going to take forever to figure this out, right? They just want a competent adjudicator. And they're not called upon to try to guess how long it's going to take to get a properly appointed board, right? And say, listen, we don't want to do this any longer than we have to, but we need a properly appointed judge to decide it. But at the end of the day, due process was owed to these plaintiffs. They had a due process right to a timely post deprivation hearing. I think that begs the question, a due process violation, because the question was how long of a delay implicates due process. And it seems to me it may depend a lot on context. But litigation, even in the outside of the administrative process, litigation often takes five, six years in cases. And so there's an important distinction on that, Judge, I think. And here, in a number of the cases that this court and others have looked at for this evaluation, I think the Tims case, for example, the pertinent period of delay that this court looked at for how long was too long for a due process violation only ended up being about four months from the time of the request for hearing until the hearing was held. There was a great deal more delay on that. But the distinction here is that was a lot of delay that could probably be tagged on the petitioner or the appellant in that circumstance, same as in some other matters. Malin, I think, itself was only 90 days, so not a terribly long delay. But I think some of the distinction that this court has looked at in its decisions is how much that delay is at fault of the plaintiffs. And looking at the Supreme Court finding nine months not unconstitutionally lengthy in Loudermill as a delay, well, this goes far beyond that. We're dealing with years. We're not dealing with 90 days, as in Malin. We're not dealing with four months in Tims. We're dealing with years of waiting. The other administrative cases we have, we're talking about years. We were talking about 18 years, I think, in Medicare, Medicaid reimbursement. And we talk in Black Lung, these cases typically are 8 to 12 years old. But I think there's still a distinction. People are denied their benefits. At least that's their position. I think there's still a distinction here, Judge, because in some of these other cases, I mean, we litigate, you know, things take far longer than they should sometimes. But, again, things are processing. There is movement in the cases. Here the problem is following these motions, case processing. The HHS was trying to file motions to establish or restore process, and it fully expected process to be restored. And, in fact, the proof of the pudding is it has been restored. But, Judge, I think the effect of these motions, there was no processing on these cases following these motions. HHS would file these motions. Processing would freeze. Everything would stop, and it would be put in this perpetual cycle for all of these plaintiffs, nearly 100, over and over again, dismissal without prejudice, automatic restatement, cycled again. It's unacceptable. There's no question about it. But the question is what kind of expectations does somebody come into a system with? I mean, we have a judicatory system, and we try to do our best to make things speedy trials and speedy hearings. And Congress often builds in automatic appeal periods if somebody doesn't decide. There's a lot of agencies where if a particular level doesn't decide it, the person can appeal in 180 days or whatever to the next level. And if the secretary doesn't decide, then it's deemed decided and you can go into court. But this, what are we talking about, a few years here where we had this political problem of not having an adjudicatory person or persons in place. And, Judge, if I may address, I see my time has expired here. Go ahead and respond to that. Certainly. And I think here there could have been some alternative process. The existing system was frozen. The MSPP avenue was open where agencies did not file these motions. HHS filed this motion to freeze out the MSPP process. Plaintiffs were still owed some avenue to be provided this post-deprivation hearing. There was no alternative process offered. They were wholly locked into this endless cycle. What process is provided? By statute, certainly. But I think that I don't know that HHS or the government made any efforts to process this. At the end of the day, I don't know that efforts were made to accommodate the due process rights of these plaintiffs. Thank you very much. Thank you, Judge.
judges: Paul V. Niemeyer, Julius N. Richardson, Michael Stefan Nachmanoff